**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH BREITFELDER,** | : | **Case No. C-1-01-617** |
| | : | |
| **Plaintiff** | : | **Judge Beckwith** |
| | : | **Magistrate Hogan** |
| **vs.** | : | |
| | : | |
| **HAMILTON COUNTY SHERIFF SIMON L. LEIS, JR., et al.** | : | **COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| | : | |
| **Defendants** | : | |

Now comes Defendant Simon L. Leis, Jr., Hamilton County Sheriff, John Dowlin, Hamilton County Commissioner, Todd Portune, Hamilton County Commissioner, and Phil Heimlich (successor to Tom Neyer, Jr.), Hamilton County Commissioner, in all capacities sued [hereinafter "County Defendants"], by and through counsel, who pursuant to Federal Civil Rule 56, hereby move this Court for summary judgment. The reasons therefore are set forth in the attached Memorandum, Exhibits, and the Affidavit of Connie Bernard.

Respectfully submitted,

MICHAEL K. ALLEN
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO

/s/ Stephen K. Shaw, 0018652
Stephen K. Shaw (0018652)
Trial Attorney
Susan Marie Gertz (0065319)
Assistant Prosecuting Attorneys
Hamilton County, Ohio
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202
DDN: (513) 946-3071 (Shaw)
DDN: (513) 946-3027 (Gertz)
FAX: (513) 946-3018
ATTORNEYS FOR COUNTY DEFENDANTS

# MEMORANDUM

## I. SUMMARY OF CLAIMS

Plaintiff Joseph Breitfelder brings this action, filed on August 8, 2001, as a result of injuries he claims to have suffered while employed as a deputy sheriff with the Hamilton County Sheriff's Department. Defendants Heimlich (as successor to Neyer), Portune and Dowlin are named in their official capacities as Hamilton County Commissioners, and Defendant Leis is named in both his official and individual capacities. The Complaint also names Glenn Cox as a defendant. It is alleged that Cox was the Plaintiff's supervisor at times specified in the Complaint.

Mr. Breitfelder sought damages against Defendant Cox for the injuries he claims to have sustained as the result of alleged intentional conduct by Cox on September 24, 1999. Mr. Breitfelder alleged that Defendant Cox intentionally shoved down on the hood of a car under which Mr. Breitfelder was working, installing a tracking device. The undercarriage of the vehicle allegedly struck Mr. Breitfelder in the head, causing his head to twist, resulting in injuries that have never been fully documented or diagnosed.

Mr. Breitfelder also sought damages against the County Defendants under several theories of liability. Counts I, II, III and IV of the complaint against the County Defendants were dismissed as they sought recovery for respondeat superior liability for the conduct of Mr. Cox. Also dismissed was Count VII, to the extent it sought punitive damages under state law against the County Defendants. The remaining counts are Count V, which seeks recovery against the County Defendants for disability discrimination under 42 U.S.C. § 1210-122213 (Americans with Disability Act) and County VI which seeks recovery against the County Defendants under

the Rehabilitation Act of 1973, 29 U.S.C. §794 et seq.

Plaintiff, in his Complaint, alleges the following facts to support his claims:

26. Plaintiff was subsequently denied Occupational Leave Benefits by Defendant Sheriff Leis and ordered to return to work as a Patrol Officer, despite his medical status of light duty.

27. Plaintiff was subsequently denied accommodation for his disability by Defendants Hamilton County and Sheriff Leis.

* * *

COUNT V: DISABILITY DISCRIMINATION (ADA)

60. Plaintiff was otherwise qualified to perform the job requirements with reasonable accommodation.

61. Such accommodations had been made available to other Sheriff Department employees, such as defendant Cox, who were similarly situated to Plaintiff.

62. Such accommodation was refused Plaintiff, who was accused by his employer of faking his injury.

63. Defendant Leis further retaliated against Plaintiff by refusing to grant Occupational Injury Leave benefits, despite overwhelming evidence of plaintiff's disability.

64. Plaintiff subsequently involuntarily retired under a disability.

* * *

COUNT VI: REHABILITATION ACT OF 1973

69. Defendants Leis and Hamilton County has (sic) discriminated against

Plaintiff on the basis of his disability by refusing to make reasonable accommodations for his disability.

70. Defendants Leis and Hamilton County have discriminated against Plaintiff on the basis of his disability by treating him differently than other similarly situated employees.

71. Defendants Leis and Hamilton County have retaliated against Plaintiff by ordering him back to work, knowing that he was under light duty and would be unable to perform all of the essential job functions.

72. Plaintiff subsequently was constructively discharged and involuntarily retired under a disability.

## II. NO DISPUTE AS TO MATERIAL FACTS

Following his injury on September 24, 1999, plaintiff did not return to work and subsequently applied in October 1999 for both worker's compensation benefits and Occupational Injury Leave (OIL) benefits, as per General Order No. 314 (Defendants' Exhibit A). OIL benefits are implemented under the discretionary authority of the Sheriff and provide payment to the deputy for lost income due to occupational injuries. If OIL is granted, the General Order requires that the employee shall authorize that benefits derived from the employee's worker's compensation claim be signed over to the Sheriff, so that the Sheriff may then issue 100% of the normal rate of pay to the employee. The employee is then being paid partly from worker's compensation benefits, and partly from OIL benefits, but the employee suffers no loss of income during the recovery period post-injury.

Throughout October 1999, Mr. Breitfelder consulted both Dr. Roberts and Dr. Koppenhoeffer regarding the September 24 injury, and both physicians supplied the Sheriff's

office with Fitness for Duty Evaluations. Dr. Koppenhoefer felt that Mr. Breitfelder could work light duty, but could not break up fights. (Defendants' Exhibit B: Leis Depo., Exhibit 5: Koppenhoefer report dated 11/16/99). When Mr. Breitfelder had still not returned to work by early November, the Sheriff contacted Mr. Breitfelder and asked that he report to work as a Desk Clerk. Mr. Breitfelder did not appear for duty, and a meeting was held with Mr. Breitfelder on November 19, 1999 to discuss the re-assignment and Mr. Breitfelder's status. At that time, Mr. Breitfelder was offered re-assignment to accommodate his injury, but he felt that he was unable to work in that position and declined to do so.

Based upon Mr. Breitfelder's statement during the November 19 meeting that his medication would interfere with his ability to work, on November 20, 1999, the Sheriff requested clarification from Dr. Koppenhoefer as to Mr. Breitfelder's ability to work light duty. (Defendants' Exhibit B: Leis Depo., Exhibit 2). Importantly, the fact that Mr. Breitfelder was offered "light duty" is confirmed by a letter authored by Gail Wright, of the Sheriff's Department, to Dr. Koppenhoefer, dated November 20, 1999, in which she refers to the November 19 meeting, during which "Mr. Breitfelder raised concerns of his ability to return to work in even a limited duty capacity. Mr. Breitfelder stated he was on a medication called "vikadin" (spelling I am not sure is correct) and that the drug caused him vomiting and extreme drowsiness." Ms. Wright sought the doctor's opinion on whether Mr. Breitfelder could perform his essential job functions in a light duty capacity in light of the effects described by Mr. Breitfelder. Since Mr. Breitfelder had since withdrawn from Dr. Koppenhoefer's care, Koppenhoefer did not respond to this request for clarification. Dr. Roberts, on the contrary, did respond and indicated on December 3, 1999, "At present, I do not see any way he can perform any part of the authored job." (Defendants' Exhibit B: Leis Depo., Exhibit 3). The "authored

job" was that of Patrol Clerk.

Throughout the fall of 1999, the medical evidence was contradictory as it pertained to Mr. Breitfelder's ability to return to work. Thus, Mr. Breitfelder was further examined on December 20, 1999 by Dr. Bacevich, an independent examiner. His report, dated December 22, 1999, questions Mr. Breitfelder's injury, but concludes, based upon his subjective complaints:

> "At this point in time, with the amount of pain and the amount of restriction of motion of the neck, as well as the left arm, and the fact that he has (sic) not independently driving his vehicle, I feel light duty is not possible. . . .
>
> **DISCLOSURE:** The above analysis is based upon the available information at this time, including the history given by the examinee.... It is assumed that the information provided to me is correct."

Dr. Bacevich indicated that he could not find any objective evidence to support Mr. Breitfelder's pain complaints. His review included the tests ordered by the treating physicians, including an MRI. He recommended an EMG and a bone scan for further analysis. Based upon Mr. Breitfelder's complaints in December 1999, Dr. Bacevich did not feel Mr. Breitfelder could work, even on a light duty basis. (Defendants' Exhibit B: Leis Depo., Exhibit 7, p.4). Moreover, beginning in early 2000, Dr. Shapiro, a third treating physician, evaluated Mr. Breitfelder and documented his opinion, "He is not able to do light duty in as much as prolonged sitting is going to aggravate persistent neck pain. Also, I don't think he should be in a position where he is gong to be responsible, in as much as he is going to require some analgesia at this time."

Mr. Breitfelder subsequently underwent a bone scan, an EMG and a followup MRI in the

spring of 2000. All were negative. Based upon these negative results, Dr. Bacevich rendered the subsequent opinion that, "Based upon my examination, I feel that his symptoms are magnified and out of proportion to objective findings. He demonstrates significant voluntary guarding on attempts to move his left shoulder. He does not have a true frozen shoulder. This man's condition correlates with a factitious disorder which is usually characterized by physical or psychological symptoms produced in order to assume the sick role." (Defendants' Exhibit B: Leis Depo., Exhibit 11).

Based upon Dr. Bacevich's original opinion, Sheriff Leis denied the application for OIL benefits on March 17, 2000. (Defendants' Exhibit B: Leis Depo., p. 24). He felt that Dr. Bacevich's opinion verified his own opinion with respect to the claim. (Defendants' Exhibit B: Leis Depo., p. 25). As a result, Mr. Breitfelder filed a grievance on March 20, 2000 in which he sought the granting of OIL benefits. On April 7, 2000, a grievance meeting was held with Sheriff Leis, Chief Deputy Sean Donovan, Gail Wright (Sheriff's counsel), Mr. Breitfelder, and Guy Kaufman (the union representative), in which the parties discussed the request for OIL. At that meeting the Sheriff sought to have Mr. Breitfelder come back to work in the Patrol Clerk division. (Defendants' Exhibit C: Donovan Depo., p. 18-19). However, Mr. Breitfelder denied that he was able to return to work at all. Sheriff Leis later denied the grievance following the April 7 grievance meeting.

Mr. Breitfelder never sought to return to work after filing his request for OIL benefits in March 2000. (Defendants' Exhibit C: Donovan Depo., p. 20). In fact, during the pendency of his grievance seeking payment of the OIL benefits, Mr. Breitfelder also initiated an application for disability retirement under the PERS Retirement System of Ohio in May 2000 without informing the Sheriff's Office of his intent to do so. The application was ultimately granted by

PERS.

Pursuant to the union contract, an arbitration hearing on Mr. Breitfelder's grievance was conducted on November 14, 2000. On January 18, 2001, Mr. Breitfelder's grievance was sustained and he was awarded OIL benefits for a period of 125 days, per the Union contract. This was based, necessarily, on the hearing officer's conclusion that Mr. Breitfelder could not perform light duty work: "Therefore, the arbitrator finds that as of April 26, 2000, the grievant was unable to work <u>in any capacity</u> for the Employer due to his occupational injury." (Defendants' Exhibit G: Arbitration Award dated 1/18/01) (Emphasis added).

Distilled to their essence, the above facts reflect that Mr. Breitfelder was totally disabled and was unable to work, even with accommodation, after the September 24 injury. By his own admission and according to the medical documentation he, through his treating physicians, provided to the Sheriff, he was unable to work, even in a light duty capacity.

## III. STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *U.S. v. Diebold, Inc.*, 369 U.S. 654 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In response to a summary judgment motion properly supported by evidence, the non-

moving party is required to present *significant probative evidence* which makes it necessary to resolve the parties' differing versions at trial. *60 Ivy Street v. Alexander*, 822 F.2d 1432 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929 (6th Cir. 1989)(emphasis added). Conclusory allegations are not sufficient to oppose a properly supported motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155 (6th Cir. 1990). The United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded...as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## IV. ARGUMENT OF LAW

### A. Plaintiff Fails to Meet the Requirements of a Discrimination Claim Under the Americans with Disabilities Act and the Rehabilitation Act.

The standards for evaluating discrimination claims under the Rehabilitation Act are the same standards employed under the Americans with Disabilities Act (ADA):

> In a Rehabilitation Act case, courts must apply the same standards as those used in interpreting cases under the Americans with Disabilities Act. See *29 U.S.C. § 794*(d); *Burns v. City of Columbus, Dep't of Pub. Safety*, 91 F.3d 836, 842 (6th Cir. 1996)

The Act prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a). *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173 at 1178 (6th Cir. 1996)

To establish indirect evidence of discrimination, plaintiff must produce the following evidence to maintain a prima facie case of disability discrimination: 1) the plaintiff is disabled; 2) the plaintiff is otherwise qualified for the position, with or without reasonable accommodation;

3) the plaintiff suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) similarly situated persons not in the protected class were treated differently. *Back v. United States Postal Serv.*, 2000 U.S. App. LEXIS 6133, at *9, No. 99-5294 (6th Cir. March 29, 2000) (citing *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Monette*, 90 F.3d at 1184; *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994)). Following plaintiff's prima facie case, the defendant must offer a legitimate reason for the defendant's action. *Monette*, 90 F.3d at 1186. Plaintiff retains the burden of proving the defendant's explanation is false **[**13]** or pretextual. *Monette,* 90 F.3d at 1186.

### 1. The Plaintiff Is Not a Qualified Person With a Disability as Defined by the ADA.

"A person otherwise qualified for the job is a person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of herself or others." 29 C.F.R. § 1614.203(a)(6)

"Reasonable accommodation" is defined in part as:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
> 42 U.S.C. §§ 12111(9)(B)

*Monette* provides the standard for evaluating this aspect of the claim:

> "Put simply . . . if the employer claims . . . that the disabled individual would be unqualified to perform the essential functions of the job even with the proposed accommodation, the disabled individual must prove that he or she would in fact be qualified for the job if the employer were to adopt the proposed accommodation." *Monette*, 90 F.3d at 1184

"The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires," but it does not include only marginal functions. 29 C.F.R. §§ 1630.2(n)(1). In determining whether a particular function is essential, the regulations instruct courts to consider the following list of factors, which is illustrative rather than exhaustive:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.
>
> 29 C.F.R. §§ 1630.2(n)(3).

The inquiry into whether a function is essential is fact specific. See *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849 (6th Cir. 1998); *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988); *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000) And, the ADA does not require employers to accommodate individuals by shifting an essential job function onto others; it is well established that an employer is not obligated to create a position not then in existence; the ADA does not compel an employer to convert temporary positions it has set aside into permanent positions for its disabled employees. *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 729-730 (6th Cir. 2000)

In the instant case, Mr. Breitfelder could not perform the essential functions of a deputy

sheriff. Placing him in the position of a deputy sheriff would have endangered the safety of himself and others. In fact, he has never returned to the point where he could perform the essential functions of performance as a deputy sheriff. As of July 5, 2001, he could not subdue prisoners, he could not fire a weapon, he could not perform the fitness evaluation that the Sheriff requires, his weight exceeded the Sheriff's requirements; in essence, he could not defend himself or protect others. No matter what accommodation was offered, he could not fulfill the essential functions of his job as a deputy sheriff. As noted in *Hoskins*, such requirements are clearly the essential functions of a deputy sheriff. Furthermore, "Fitness for Duty" forms utilized by the Sheriff's department make it clear that these are essential functions of the job. (Defendants' Exhibit B: Leis Depo., Exhibits 3, 5). As such, Mr. Breitfelder does not qualify for protection under the ADA.

**2. The Plaintiff Did Not Suffer An Adverse Employment Decision.**

In this case, Mr. Breitfelder can point to no adverse employment decision. The Sheriff did not take any adverse employment action. Mr. Breitfelder indicated he could not work - period. He was offered light duty. He appeared at two meetings and indicated he could not work light duty. Mr. Breitfelder applied for and obtained PERS permanent disability retirement benefits. He admits he still cannot perform the essential functions of his job. (Defendants' Exhibit D: Breitfelder Depo., July 5, 2001, pp. 268-270.) Furthermore, Mr. Breitfelder was not terminated, and he was not refused employment or reassignment. He suffered no adverse employment action because of his disability.

Thus, Mr. Breitfelder's only potential claim, if in fact it is a claim at all, is a discrimination claim based upon the Sheriff's refusal to grant him OIL benefits. However, the evidence establishes that the Sheriff's decision to deny OIL benefits, made pursuant to the

provisions established in the Collective Bargaining Agreement (CBA) and General Order 314, was based upon the medical documentation, including the independent medical examination, that established that no one had been able to identify any medical basis for Mr. Breitfelder's complaints and all objective testing had failed to disclose any objective evidence of an injury to explain his symptoms. (Defendants' Exhibits A and E). Thus, the Sheriff had a reasonable basis for his decision. More importantly, the Sheriff was simply exercising his rights under the Union contract to deny the claim. Ultimately, Mr. Breitfelder was granted the benefit and the Sheriff's department paid the benefit.

**3. Plaintiff's Certification As "Disabled" Under PERS Disability Retirement Establishes Without Question That Plaintiff Is Not Able To Perform His Essential Job Functions.**

R.C. 145.35 provides the authority for certifying an employee under the PERS system as qualified for disability retirement. Section 145.35(E) provides:

> Medical examination of a member who has applied for a disability benefit shall be conducted by a competent disinterested physician or physicians selected by the board to determine whether the member is <u>mentally or physically incapacitated for the performance of duty by a disabling condition either permanent or presumed to be permanent.</u> (Emphasis added)

This provision makes it clear that Mr. Breitfelder represented to the PERS Board that he was disabled, i.e., physically incapacitated from the performance of his duties, and the PERS Board agreed with that assertion. It is also important to note that Mr. Breitfelder is considered "on leave of absence" for the first five years he is on disability retirement. R.C. 145.362. He is required to undergo an annual exam and certification of his disability status. If he is found not to be disabled, the Sheriff is required to reinstate him to his previous position and salary or to a position and salary similar thereto. R.C. 145.362 Thus, he has not been terminated, but is on a leave of absence, which he himself requested. These facts further demonstrate that Mr.

Breitfelder has not experienced an adverse "job action" and thus, does not state a claim for which relief may be granted under either the ADA or the Rehabilitation Act.

**B. Plaintiff's Claim for Retaliation Is Barred As A Matter Of Law For Failure To Exhaust Administrative Remedies.**

Federal courts do not have subject matter jurisdiction of Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. Transamerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). Retaliation claims are generally excepted from this filing requirement because they usually arise after the filing of the EEOC charge. *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 544-45 (6th Cir. 1991). *Id.* at 546-47. However, this exception to the filing requirement does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed. *See id.* at 547.

In the instant case, Mr. Breitfelder did not raise the failure to pay the OIL benefits as a basis for his discrimination claim, and he made no claim to the EEOC for discrimination actionable under the Rehabilitation Act. Instead he relied solely on the following allegations in his EEOC charge:

I. From April 2000 through November 15, 2000, I was denied another assignment as a reasonable accommodation. On November 15, I was placed on disability retirement and was terminated.

II. Sharon Schweinefus (Employee Services Representative) informed me that I was being terminated because Sheriff Leis does not have a job that I can do.

III. I believe I have been discriminated against because of my disability in

violation of Title I of the Americans with Disabilities Act.

Nowhere does Mr. Breitfelder raise the denial of OIL benefits as a claim under the ADA, as he asserts in his complaint. He also fails to mention any alleged claim under the Rehabilitation Act. Therefore, he has failed to exhaust his administrative remedies as to each of these claims. This failure is fatal to the bringing of his claims before this Court. *Abeita v. Transamerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). Any retaliation claim by Mr. Breitfelder existed long before the EEOC charge was filed, and since it was not included in his EEOC charge, he cannot raise it for the first time in this court. As such, any retaliation claims are barred as a matter of law.

Summarily, Mr. Breitfelder alleges that he was able to perform light duty work, that the County Defendants denied him the opportunity to perform light duty work and, instead, sought to have him return to work without an accommodation. (Complaint, ¶ ¶ 62, 69.) He further argues that the County Defendants discriminated against him through retaliation by refusing him OIL benefits. (Complaint ¶ 63.) These are completely contradictory claims. If Mr. Breitfelder was able to work light duty, the county employer was permitted to (and in fact did) offer him a light duty assignment in lieu of paying OIL benefits. (Defendants' Exhibit B: Leis Depo., p. 16-17; Defendants' Exhibit C: Donovan Depo., p. 6-7, 16; Defendants' Exhibit A; and Defendants' Exhibit E: Collective Bargaining Agreement, Section 26.6) Mr. Breitfelder, however, indicated that he could not perform in a light duty capacity and sought OIL benefits for that reason. Ultimately, Mr. Breitfelder pursued the appeal of the denial of his claim for OIL benefits through the grievance process, within the context of both the General Orders and the Collective Bargaining Agreement process. At the conclusion of that process, the arbitrator concluded that Mr. Breitfelder "was unable to work in any capacity" and, under the bargaining agreement,

granted his grievance and awarded him OIL benefits for the full 125 days under the Union contract. (Defendants' Exhibit G: Arbitrator's Opinion and Award dated 1/18/01, p. 23) Thus, pursuant to said process, Mr. Breitfelder was awarded the benefits he sought. He sought no further relief and did not further pursue any claims arising out of that process. Thus, he has no existing claim arising out of the Sheriff's denial of benefits, and no further cause of action under either the ADA or the Rehabilitation Act exists for that denial.

### C. County Defendants Are Entitled To Summary Judgment On Their Claims For Recovery Of Excess Payments Paid to Plaintiff.

General Order 314.07.5 provides as follows:

> "OIL benefits, if granted, are not in lieu of the employee receiving worker's compensation benefits. Thus, an employee who receives medical treatment for an injury and requests OIL must contact the managed care organization (MCO) and inform them of his/her work related injury for purposes of worker's compensation benefits. Further, the employee is obligated to maintain contact with the MCO and update the MCO of his or her condition. The Sheriff's Office obligation under OIL is only the difference between employee's regular rate of pay and the amount of income benefit paid to the employee by OBWC.

And, General Order 314.07.8 further provides as follows:

> "If OIL is granted, the employee shall, by written agreement, authorize the financial benefits for income compensation derived from the Worker's Compensation claim to be signed over to the Sheriff, and shall by his/her acceptance of OIL benefit status agree to provisions of Section 314.04.6 relative to any required duty related action necessary during OIL period."

Following the Arbitration Decision of January 18, 2001, Mr. Breitfelder was awarded OIL benefits with full pay for 125 days, representing the time period of September 27, 1999 through March 27, 2000. During that time period, the Bureau of Worker's Compensation also paid Mr. Breitfelder temporary total disability benefits. Thus, Mr. Breitfelder was "double-

paid" for the time period of February 29, 2000 through March 25, 2000, and he owes the County Defendants the amount of $2,106.00, as per the provisions of General Order 314 . (Defendants' Exhibit F: Bernard Affidavit). Mr. Breitfelder has failed to reimburse the County Defendants for this amount, and County Defendants therefore request that judgment be awarded in their favor on this counterclaim.

## V. CONCLUSION

Plaintiff cannot demonstrate that he was able to perform the essential functions of his job, or that any adverse job action was taken against him due to his disability. Moreover, Plaintiff's claim under the ADA for the alleged discriminatory treatment based upon the denial of his OIL benefits does not state a claim for relief under the ADA, and even if it does state a claim, it is barred as a matter of law by plaintiff's failure to assert the claim as part of his EEOC claim under the ADA. Furthermore, the Rehabilitation Act does not provide plaintiff with any greater rights than he would have under the ADA and the standard for evaluating said claims are the same under both acts, thus the arguments applicable to the ADA claims are equally effective as to his Rehabilitation Act claims. Any claims by Plaintiff under the Rehabilitation Act are barred since he failed to assert them before the EEOC. Based upon the foregoing, all of the Hamilton County Defendants are entitled to judgment as a matter of law. Therefore, County Defendants respectfully request that this honorable court grant summary judgment on all remaining claims and dismiss plaintiff's complaint with prejudice, and further, that summary judgment be granted in favor of the County Defendants' on their counterclaim against the Plaintiff in the amount of $2,106.00.

Respectfully submitted,

MICHAEL K. ALLEN
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO

/s/ Susan Marie Gertz, 0065319
Stephen K. Shaw (0018652)
Trial Attorney
Susan Marie Gertz (0065319)
Assistant Prosecuting Attorneys
Hamilton County, Ohio
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202
DDN: (513) 946-3071 (Shaw)
DDN: (513) 946-3027 (Gertz)
FAX: (513) 946-3018
ATTORNEYS FOR COUNTY DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Lucian Bernard, Esq., and I hereby certify that I have mailed by United States Postal Service the document to the following nonCM/EDG participants:

Lucian Bernard, Esq.
Attorney at Law
1224 Highway Avenue
Covington, Kentucky 41012

/s/ Susan Marie Gertz (0065319)
Susan Marie Gertz (0065319)
Assistant Prosecuting Attorney
sgertz@prosecutor.hamilton-co.org