IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH BREITFELDER,** | : | Case No. C-1-01-617 |
| | : | |
| Plaintiff | : | Judge Beckwith |
| | : | Magistrate Hogan |
| vs. | : | |
| | : | |
| **HAMILTON COUNTY SHERIFF** | : | **COUNTY DEFENDANTS' REPLY TO** |
| **SIMON L. LEIS, JR., et al.** | : | **PLAINTIFF'S RESPONSE TO** |
| | : | **DEFENDANTS' MOTION FOR** |
| Defendants | : | **SUMMARY JUDGMENT** |

Now comes Defendant Simon L. Leis, Jr., Hamilton County Sheriff, John Dowlin, Hamilton County Commissioner, Todd Portune, Hamilton County Commissioner, and Phil Heimlich (successor to Tom Neyer, Jr.), Hamilton County Commissioner, in all capacities sued [hereinafter "County Defendants"], by and through counsel, who make the following Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment.

                                                                       Respectfully submitted,

                                                                       MICHAEL K. ALLEN
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO

/s/ Susan Marie Gertz, 0065319
Stephen K. Shaw (0018652)
Trial Attorney
Susan Marie Gertz (0065319)
Assistant Prosecuting Attorneys
Hamilton County, Ohio
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202
DDN: (513) 946-3071 (Shaw)
DDN: (513) 946-3027 (Gertz)
FAX: (513) 946-3018

ATTORNEYS FOR COUNTY DEFENDANTS

## **MEMORANDUM**

To establish indirect evidence of discrimination, Plaintiff must produce the following evidence to maintain a prima facie case of disability discrimination: 1) the Plaintiff is disabled; 2) the Plaintiff is otherwise qualified for the position, with or without reasonable accommodation; 3) the Plaintiff suffered an adverse employment decision; 4) the employer knew or had reason to know of the Plaintiff's disability; **and** 5) similarly situated persons not in the protected class were treated differently. *Back v. United States Postal Serv.*, 2000 U.S. App. LEXIS 6133, at *9, No. 99-5294 (6th Cir. March 29, 2000) (citing *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Monette*, 90 F.3d at 1184; *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994)). Following plaintiff's prima facie case, the Defendant must offer a legitimate reason for the defendant's action. *Monette*, 90 F.3d at 1186. Plaintiff retains the burden of proving the defendant's explanation is false **[\*\*13]** or pretextual. *Monette,* 90 F.3d at 1186.

Plaintiff fails to meet each and every requirement listed above. In his response to Defendants' Motion for Summary Judgment, Plaintiff argues that he is "a disabled person who is otherwise qualified to perform the duties of a Detective in the RENU unit of the Sheriff's department with reasonable accommodation". (See Response, page 13). The evidence in this case, especially Plaintiff's own admissions, speaks otherwise, demonstrating that he cannot work in any capacity, regardless of accommodation. As such, there is no dispute as to material facts in this case, and summary judgment in favor of Defendants is proper.

1) **The evidence, including Plaintiff's own testimony, demonstrates that Plaintiff was disabled and not qualified to work in any capacity from September 24, 1999 through May, 2000.**

As mentioned previously, a meeting occurred on November 19, 1999 between Mr. Breitfelder, the Sheriff, Gail Wright (Sheriff's counsel) and Chief Donovan regarding the issue of Mr. Breitfelder returning to work reassigned as a patrol clerk. Mr. Breitfelder submits that he requested an accommodation for his disability at this meeting, said accommodation being a transfer out of RENU into the computer unit of the Sheriff's office, or RECI, and that the Sheriff was unwilling to accommodate him. (Breitfelder Deposition date 11/20/02, p. 80-82). However, a followup letter to Mr. Breitfelder's treating physicians, Drs. Koppenhoefer and Roberts, written by Ms. Wright the next day, November 20, 1999, reads as follows:

> "At this meeting, Mr. Breitfelder raised concerns of his ability to return to work in even a limited duty capacity. **Mr. Breitfelder stated he was on a medication called Vicodin (spelling I am not sure is correct), and that the drug caused him vomiting and extreme drowsiness. The Sheriff's Office would like to know, if we place Mr. Breitfelder in a desk-only position with no contact with prisoners, would he be able to perform those functions. I understand the Fitness for Duty form you completed indicates Mr. Breitfelder could perform these functions. However, my concern is the medication he is on and its side effects as described by Mr. Breitfelder."** [Emphasis added.]

During his deposition on November 20, 2002, Mr. Breitfelder testified as followed, when questioned about what transpired at the November 19, 1999 meeting and Ms. Wright's followup letter to his treating physicians:

Q:     Now, the sentence that describes what you've said, "Mr. Breitfelder raised concerns of his ability to return in even a limited duty capacity. Is that correct, did you raise those concerns at that meeting?

A:    I believe at that given time, I was pretty much unsure one way or the other.

Q:    Did you say you could come back?

A:    I told him I wanted to come back.

Q:    I didn't ask that. Did you say you could come back?

A:    I believe what I said was, I want to come back to work, but there would have to be some type of accommodation.

Q:    Did you ever say you could not come back, you can't work - - I can't work? **Did you ever say, I can't work?**

A:    **I may have said that.**

Q:    **Which of the two was the Sheriff to act on?**

A:    I don't know if the second one I said at this meeting or not.

Q:    Okay. Do you remember talking about Vicodin and the side effects at that meeting?

A:    They may have asked about, you know, what medication I was on and I may have told them. I don't recall 100 percent, no, I don't.

Q:    Okay. Did you discuss being placed at a desk with no contact with prisoners?

A:    I don't recall if those were the exact words.

Q:    Was that the exact concept –

A:    I don't –

Q:    – even if it –

A:    – understand you.

Q:    Well, if those weren't the exact words, was the concept of sitting at a desk

-4-

without prisoner contact discussed with you that day in that meeting?

A: I don't know that it was.

Q: You don't remember?

A: No, I don't remember if that exact terminology was used for me. I see that it's in the letter to Dr. Koppenhoefer. I don't recall hearing that, that I would have absolutely no contact with prisoners.

Q: Yet it's pretty clear that this letter deals with exactly that concept, Koppenhoefer's report? That's the last sentence of that paragraph that you read.

A: I believe that is what Gail Wright is trying to –

Q: – communicate.

A: – communicate – Thank you.

Q: Yeah.

A: – communicate to Dr. Koppenhoefer.

Q: Right. And then you signed releases. I mean, doesn't it appear obvious that you discussed it and that you got releases for her to find out if you could do these things?

A: Well, when I went down to see the Sheriff on the 19th, and I spoke with him and spoke with Gail Wright and the chief deputy, my whole feeling from day one was that the department would support me and accommodate me and life would go on, everybody would be happy. I had no problem signing any and all releases for the department to get any information they wanted.

Q: Weren't they trying to get you back to work?

  A:  I believe they wanted me gone.

  Q:  None of this adds up to you to getting you back to work.  All this adds up to making you leave; that's what you believe?

    (Breitfelder Depo dated 11/20/02, pp. 101-104)

The above demonstrates that the Sheriff's office was attempting to accommodate Mr. Breitfelder's disability by getting him back to work in a desk-only light duty position having no contact with prisoners.   However, Mr. Breitfelder refused the offer, and in fact, medical experts later opined that light duty was not possible:

- On December 3, 1999, Dr. Roberts, Plaintiff's treating physician, opined: "At present, **I do not see any way he can perform any part of the authored job**." (Defendants' Exhibit B: Leis Depo., Exhibit 3).   The "authored job" was that of Patrol Clerk. [emphasis added].

- On December 22, 1999, Dr. Bacevich, the independent medical examiner, questions Mr. Breitfelder's injury, but concludes, based upon his subjective complaints: "At this point in time, with the amount of pain and the amount of restriction of motion of the neck, as well as the left arm, and the fact that he has (sic) not independently driving his vehicle, **I feel light duty is not possible**. . . . **DISCLOSURE:** The above analysis is based upon the available information at this time, including the history given by the examinee....  It is assumed that the information provided to me is correct." [Emphasis added].

- In early 2000, Dr. Shapiro, a third treating physician, evaluated Mr. Breitfelder and documented his opinion, "**He is not able to do light duty in as much as**

-6-

> **prolonged sitting is going to aggravate persistent neck pain. Also, I don't think he should be in a position where he is gong to be responsible, in as much as he is going to require some analgesia at this time**." [Emphasis added].

- In the spring of 2000, upon Dr. Bacevich's suggestion, Mr. Breitfelder underwent a bone scan, an EMG and a followup MRI. All were negative. Based upon these negative results, Dr. Bacevich rendered the subsequent opinion that, "Based upon my examination, I feel that his symptoms are magnified and out of proportion to objective findings. He demonstrates significant voluntary guarding on attempts to move his left shoulder. He does not have a true frozen shoulder. This man's condition correlates with a factitious disorder which is usually characterized by physical or psychological symptoms produced in order to assume the sick role." (Defendants' Exhibit B: Leis Depo., Exhibit 11).

Also noteworthy is the arbitrator's statement of January 18, 2001, regarding whether Mr. Breitfelder was able to work even light duty during the pertinent time period: **"Therefore, the arbitrator finds that as of April 26, 2000, the grievant was unable to work <u>in any capacity</u> for the Employer due to his occupational injury."** (Defendants' Exhibit G: Arbitration Award dated 1/18/01) (Emphasis added).

Thus, Mr. Breitfelder was in fact offered reassignment to a light duty position on two occasions (November 19, 1999 and April 7, 2000), however, he twice declined the position and responded that he was unable to return to work at all, stressing in particular pain and the negative effects of his medication regime. (Breitfelder Depo. dated 11/20/02, p. 96; Defendants' Exhibit C: Donovan Depo., p. 18-19; Letter from Gail Wright to Drs. Koppenhoefer and Roberts dated

11/20/99) Despite these facts, the Sheriff, under the authority granted him as per the General Orders and the Collective Bargaining Agreement regarding OIL benefits, denied Mr. Breitfelder's OIL claim, primarily due to the facts that a) further diagnostic testing during the spring of 2000 revealed no objective findings to corroborate Mr. Breitfelder's injuries and b) Dr. Bacevich's opinion in 2000 that Mr. Breitfelder's condition correlated with a factitious injury. Ultimately, Mr. Breitfelder exhausted his rights under the Collective Bargaining Agreement through the grievance process, and the Sheriff's decision was reversed. He cannot further pursue those rights here. The pertinent issue here is that Mr. Breitfelder was not able, according to his physicians, to return to work, even with accommodation, after filing his request for OIL benefits in October, 1999. By his own account and that of his treating physicians, he was disabled and unable to perform even light duty. As such, he was disabled and not qualified to work, even with accommodation, and he cannot meet the requirements of establishing a claim under the ADA and/or the Rehabilitation Act.

**2.     The Plaintiff did not suffer an adverse employment decision.**

In this case, Mr. Breitfelder can point to no adverse employment decision. The Sheriff did not take any adverse employment action, nor was Mr. Breitfelder terminated. The Sheriff tried to get him back to work by offering desk-only light duty. He appeared at two meetings and indicated he could not work light duty. Mr. Breitfelder indicated he could not work - period. In May, 2000, Mr. Breitfelder, of his own initiative, applied for and later obtained PERS permanent disability retirement benefits. He admits he still cannot perform the essential functions of his job. (Defendants' Exhibit D: Breitfelder Depo., July 5, 2001, pp. 268-270.) Plaintiff's application for and receipt of OPERS disability retirement benefits, due to his persistent disability, is the reason

that he is not currently employed at the Hamilton County Sheriff's Department.

Summarily, Plaintiff fails to demonstrate that he has even a colorable claim of disability discrimination under the ADA and the Rehabilitation Act on the part of these Defendants. For the reasons stated above and those outlined in Defendants' Motion for Summary Judgment, all of the Hamilton County Defendants are entitled to judgment as a matter of law. Therefore, County Defendants respectfully request that this honorable court grant summary judgment on all remaining claims and dismiss plaintiff's complaint with prejudice, and further, that summary judgment be granted in favor of the County Defendants' on their counterclaim against the Plaintiff in the amount of $2,106.00.

        Respectfully submitted,

        MICHAEL K. ALLEN
        PROSECUTING ATTORNEY
        HAMILTON COUNTY, OHIO

        /s/ Susan Marie Gertz, 0065319
        Stephen K. Shaw (0018652)
        Trial Attorney
        Susan Marie Gertz (0065319)
        Assistant Prosecuting Attorneys
        Hamilton County, Ohio
        230 E. Ninth Street, Suite 4000
        Cincinnati, Ohio 45202
        DDN: (513) 946-3071 (Shaw)
        DDN: (513) 946-3027 (Gertz)
        FAX: (513) 946-3018
        ATTORNEYS FOR COUNTY DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Lucian Bernard, Esq., and I hereby certify that I have mailed by United States Postal Service the document to the following nonCM/EDG participants:

Lucian Bernard, Esq.     .
Attorney at Law
1224 Highway Avenue
Covington, Kentucky 41012

        /s/ Susan Marie Gertz (0065319)

        Susan Marie Gertz (0065319)
        Assistant Prosecuting Attorney
        sgertz@prosecutor.hamilton-co.org