IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joseph Breitfelder,              )
                                 )
            Plaintiff,           )  Case No. 1:01-CV-617
                                 )
     vs.                         )
                                 )
Simon Leis, <u>et al.</u>,      )
                                 )
            Defendants.          )

O R D E R

          This matter is before the Court on a motion for summary
judgment (Doc. No. 42) filed by Defendants Simon Leis and the
Hamilton County Board of County Commissioners.[1]  For the reasons
set forth below, Defendants' motion for summary judgment is
**GRANTED IN PART AND MOOT IN PART**.  Defendants have also filed a
motion to strike Plaintiff's memorandum in opposition to their
motion for summary judgment (Doc. No. 46).  Plaintiff also filed
a motion to file a surreply brief (Doc. No. 52).  Both of these
motions are **MOOT.**

I. <u>Background</u>

          Plaintiff Joseph Breitfelder was a detective with the
Regional Enforcement Narcotics Unit ("RENU") of the Hamilton
County Sheriff's Department.  On September 24, 1999, Plaintiff

---

[1]      On occasion, for ease of reference, the Court will
refer to these Defendants collectively as "the County
Defendants."

was injured on the job while installing a covert tracking device on a car.  While Plaintiff was underneath the car, his supervising officer, Sgt. Glenn Cox, pushed down on the fender causing the undercarriage to strike Plaintiff in the head. Plaintiff states that when the car hit him, he felt a pop in his neck and saw a flash of light.  Plaintiff then experienced intense pain.  Breitfelder Aff. ¶¶ 19-21Plaintiff returned to work for a short period, but later went to the hospital where doctors suggested that Plaintiff had suffered a cervical injury or possibly soft tissue damage.  Id. ¶ 23.

There appears to be no dispute that as a result of his injury, Plaintiff was and remains physically unable to perform the functions of a police officer with arrest powers.  The primary question is whether Plaintiff was able to perform any so-called light duty positions within the Sheriff's Department, with or without a reasonable accommodation.

One light duty position in the Sheriff's Department is the patrol clerk position.  The main function of the patrol clerk is to assist in the office by answering phones, processing reports and paperwork, handling inquiries, and processing prisoners.  See Plaint. Ex. 13.  The job description for patrol clerk includes a number of physical skills and abilities, among others, the ability to lift, carry or drag an average sized adult out of a cell, stay awake and alert for long periods of time, and physically break up fights and gain physical control over persons in custody.  Id.

2

The earliest physician's certification in the record is dated November 16, 1999 and completed by Dr. Koppenhoefer. Dr. Koppenhoefer certified that Plaintiff was unable to perform any of the duties of patrol clerk at the present time. Plaint. Ex. 16. The second part of the certification asked the physician to recommend whether the patient should be temporarily re-assigned to less strenuous duties. One of the requirements of less strenuous duty, however, was the ability to break up fights. Dr. Koppenhoefer recommended that Plaintiff be reassigned to less strenuous duties, but stated "I question whether he could break up fights at this time." Id.

The following month a different physician, Dr. John Roberts, also certified that Plaintiff was unable to perform the duties of patrol clerk. Dr. Roberts commented:

> Mr. Breitfelder complains of intense neck and shoulder pain . His MRI and exam are largely unremarkable. A referral to Dr. Koppenhoefer failed to aide pt. in any way. At present, I do not see any way he can perform any part of the outlined job. He does not exhibit any surgical pathology, and as a surgeon, I have nothing to offer him. I recommend he see Dr. Carl Shapiro, a rehab specialist at Mayfield Clinic . . . for an add'l opinion and ongoing care.

Id. In answering the second part of the form, however, Dr. Roberts recommended against assigning Plaintiff to less strenuous duties. In the comments section, Dr. Roberts noted:

> Mr. Breitfelder is currently suffering from chronic, incapacitating shoulder pain. He has been referred to Dr. Shapiro for his evaluation & treatment. He is to remain off work until that time.

Id.

3

On December 22, 1999, the Sheriff's Department obtained an independent medical examination of Plaintiff from Dr. Bernard Bacevich.  Based on his examination, Dr. Bacevich concluded:

> At this point in time, his subjective symptoms are far out of proportion to true objective findings.  I do not identify any definite neurological abnormalities on his examination.  I do not find any true muscle spasm, and he only reports subjective pain with palpation of the spine area, and subjective pain with movement of his neck as well as his shoulder.
>
> At this point in time, with the amount of pain and the amount of restriction of motion of the neck, as well as the left arm, and the fact that he has not independently driving his vehicle [sic], I feel that light duty is not possible.

Id.

Dr. Shapiro's January 4, 2000 office notes regarding his examination of Plaintiff state:

> I am going to change his medication around and take him off Vicodin and put him on OxyContin, which is a 12 hour time release.  I am also going to get him some decent sleep with a trycyclic antidepressant.
>
> He is incapable of defending himself, as he has only one usable arm at this time.  Consequently, I am going to keep him off work.  He is not able to do light duty in as much as prolonged sitting is going to aggravate persistent neck pain.  Also, I don't think he should be in a position where he is going to be responsible, in as much as he is going to require some analgesia at this time.

Plaint. Ex. 17.

MRI's taken of Plaintiff's brachial plexus, thoracic spine, and cervical spine in February 2000 revealed no significant abnormalities.  Id.  Dr. Shapiro's subsequent February office notes state:

> I reviewed his MRI scans today, including cervical, thoracic and brachial plexus and there are no real

4

> overt abnormalities which would suggest surgical treatment. He does have some minor spondylosis at the lower cervical spine.
>
> It was very difficult to range him or mobilize him today and it was exquisitely painful. He remains stable in terms of deep tendon reflexes, motor and sensory examination. He does have decreased grasp and motor power throughout the left arm, which he actively seeks to protect.
>
> I am rather perplexed by the extent of his presentation, given the lack of abnormalities on imaging studies and EMG.

Id.

In April 2000, Dr. Bacevich provided a follow-up opinion after reviewing Plaintiff's MRI's, EMG, and bone scan and, Dr. Shapiro's records. Plaint. Ex. 21. Dr. Bacevich concluded:

> The test results show no evidence of any disc injury or herniation, no evidence of any bone injury, and no evidence of any nerve injury or damage. His symptoms are at most consistent with a soft tissue injury. Based on my examination, I feel that his symptoms are magnified and out of proportion to objective findings. He demonstrates significant voluntary guarding on attempts to move his left shoulder. He does not have a true frozen shoulder. My opinions from my previous report remain unchanged.
>
> This man's condition correlates with a factitious disorder which is usually characterized by physical or psychological symptoms produced in order to assume the sick role.

Id.

In July 2000, however, Dr. Shapiro observed improvement in Plaintiff's condition:

> He presents NAD [no acute distress] today. He is alert, oriented, and cooperative. He is oriented x3. His cranial nerves are intact. His deep tendon reflexes, motor and sensory exam are remarkable for marked decrement in strength, with grip on left side,

5

and most strength modalities are decreased on the left. Deep tendon reflexes and sensory exams are unchanged.

Joe is still having ongoing pain issues and I did put him back on OxyContin and renewed his Vicodin also. I discussed future care with him and I probably will be transferring him for pain management. I think he probably could be now employed at a sedentary level and I think vocation re-education would be appropriate for him.

Plaint. Ex 16.

The medical records indicate that at various times during the course of his treatment, Plaintiff had prescriptions for Vicodin, OxyContin, Neuronin, Trazodone, Voltaren, and Baclofen.

The preceding discussion outlines the medical treatment, diagnoses, prognosis relevant to Plaintiff's claimed impairment. In the meantime, Plaintiff had two meetings with the Sheriff regarding his possible return to work. The first meeting occurred on November 19, 1999.

According to Plaintiff, the impetus for the first meeting was a phone call he received from Lt. Brad Winall of RENU directing him to report to duty as a patrol clerk on November 20. Breitfelder Aff. ¶ 27. Plaintiff requested a meeting because he knew that he would not be able to perform certain functions of the patrol clerk, such as breaking up fights. Id. During the meeting, Plaintiff requested an assignment working with computers in the Regional Electronics Computer Investigations ("RECI") section. Plaintiff states that it was known within the department that he was very competent with computers and he knew that the work was not physically demanding. Id. ¶¶ 28-29.

6

Nevertheless, the Sheriff denied Plaintiff's request for a transfer to RECI, stating that Plaintiff could not just be reassigned to another position. <u>Id.</u> ¶ 28. The Sheriff admitted in his deposition that he believed at the time of this meeting that Plaintiff was faking the severity of or limitations imposed by his injury. Leis Dep. at 17. The Sheriff also stated that Plaintiff should have known, based on his years of experience with the Department, that despite the formal requirements of the patrol clerk position, had he accepted an assignment to patrol clerk, he would not have been required to break up fights. <u>Id.</u> at 16-18.

The second meeting between Plaintiff and the Sheriff occurred on April 7, 2000. According to Plaintiff's affidavit, the purpose of the meeting was to discuss the Sheriff's denial of his claim for occupational injury leave ("OIL")[2] and the Sheriff's refusal to transfer him to the RECI unit. The precise details of this meeting, however are not reflected in the record except that it lasted about an hour and the Sheriff again denied

---

[2]    Pursuant to the collective bargaining agreement between the Sheriff's Department and the Fraternal Order of Police, an officer can apply for and receive OIL benefits if he sustains a work-related injury. The OIL benefit is the equivalent of full-pay, but the recipient is required to reimburse the Sheriff's Department for any worker's compensation benefits. The decision whether to grant OIL benefits rests solely with the Sheriff, except that he cannot unreasonably deny OIL benefits. In addition, the Sheriff may substitute an assignment to light duty for OIL benefits. The Sheriff denied Plaintiff's claim for OIL benefits on the grounds that the injury was not substantiated by objective medical evidence. An arbitrator later awarded Plaintiff OIL benefits after finding that he had sustained an injury and was not able to work light duty as a substitute. Plaint. Ex. 23.

Plaintiff's request for a transfer to the RECI unit.  Plaint.
Dep. at 223-26.  Plaintiff admits, however, that at no time did
he specifically request any accommodation other than a transfer,
such as the accommodations given earlier to Sgt. Cox for
assistance with lifting heavy objects and relief from combative
duties with arrestees and prisoners.  Id. at 108-11; Plaint. Ex.
7.

      In May 2000, Plaintiff applied for and ultimately was
granted a disability retirement through the Public Employees
Retirement System of Ohio.  See Plaint. Ex. 22.  Under the
applicable statute, Ohio Rev. Code § 145.35, if the disability is
expected to be longer than twelve months, it is presumed to be
permanent.  Nonetheless, an employee taking disability retirement
is considered on a leave of absence for the first five years and
may be restored to his former position or its equivalent upon a
physician's certification that the employee is capable of
resuming his former duties.  See id.; Ohio Rev. Code § 145.362.
It appears, however, that Plaintiff remains on disability
retirement status at this time.

      On September 14, 2001, Plaintiff filed a seven count
complaint (Doc. No. 1) against Defendants Simon Leis, Glenn Cox,
Thomas Neyer, Todd Portune, and John Dowlin.  Defendant Leis is
the Hamilton County Sheriff.  As mentioned, Defendant Cox was a
sergeant in the department and Plaintiff's direct supervisor.
Defendants Neyer, Portune, and Dowlin are Hamilton County
Commissioners.  In the interim, Phil Heimlich was elected to the

Board of County Commissioners and has been substituted as a party for Commissioner Thomas Neyer.

Count I asserted a claim against Defendant Cox under Ohio law for an employer's intentional tort stemming from the incident with the Mustang.  Count I also sought to impose respondeat superior liability on the County Defendants.

Count II asserted a state law battery claim against Defendant Cox.  Like Count I, Count II also sought to impose respondeat superior liability on the County Defendants.

Count III asserted a state law failure to supervise claim against Defendant Leis based on his alleged breach of duty with respect to the supervision of Defendant Cox.  Count III sought to impose respondeat superior liability on the County Defendants.

Count IV asserted a state law claim for intentional infliction of emotional distress against Defendant Cox.  Count IV again sought to impose respondeat superior liability on the County Defendants.

Finally, Counts V and VI asserted claims against the County Defendants under the Americans With Disabilities Act ("The ADA"), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 701, et seq., for denial of reasonable accommodations and retaliation.[3]

---

[3]    Plaintiff's retaliation claim was based on the Sheriff's denial of his claim for OIL benefits.  Judging from the absence of discussion about this event in the parties' briefs, it appears that Plaintiff no longer maintains or has abandoned his retaliation claim.  In any event, as Defendants observe and

Count VII was a general claim against all the Defendants for punitive damages.

On motion of the County Defendants, the Court dismissed Counts I, II, III and IV of the complaint. <u>See</u> Doc. No. 14.  The Court also dismissed Plaintiff's claim for punitive damages against the County Defendants on his state law causes of action. Later, Plaintiff voluntarily dismissed his claims against Defendant Cox.  <u>See</u> Doc. No. 33.  Thus, following these events, Plaintiff had remaining his discrimination claims for failure to accommodate his alleged disability pursuant to the ADA and the Rehabilitation Act.   The County Defendants then filed a counterclaim against Plaintiff to recover $2,106 in reimbursements allegedly due to offset Plaintiff's OIL benefits.

Following discovery, the County Defendants filed a motion for summary judgment on Plaintiff's disability discrimination claims and on their counterclaim for reimbursement of OIL benefits.  Defendants' motion has been fully briefed and is ready for disposition.

II. <u>Summary Judgment Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

Plaintiff does not contest, Plaintiff failed to file an EEOC charge on his retaliation claim.  Thus, Plaintiff's federal retaliation claim is not cognizable.  The Court does note, however, that there is still an issue regarding the amount of OIL benefits that Plaintiff must reimburse to the County Defendants.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not

11

required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's

case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

#### A. Plaintiff's Disability Discrimination Claims

Plaintiff presents claims for failure to accommodate pursuant to the Americans With Disabilities Act and the Rehabilitation Act.  At the outset, the Court observes that the requirements of the Rehabilitation Act generally parallel to the requirements of the ADA with respect to claims of employment

13

discrimination.  Mahon v. Crowell, 295 F.3d 585, 588-89 (6th Cir.
2002.  The Court, therefore, may analyze these claims together on
summary judgment.

In order to establish a prima facie case of disability
discrimination based on a failure to accommodate, a plaintiff
must show that: 1) he is an individual with a disability within
the meaning of the Act; 2) he is otherwise qualified to perform
the essential functions of his job, with or without reasonable
accommodation; 3) his employer was aware of his disability; and
4) the employer failed to provide a reasonable and necessary
accommodation for his disability.  See Smith v. Ameritech, 129
F.3d 857, 866 (6th Cir. 1997).

In Hedrick v. Western Reserve Care Sys., 355 F.3d 444,
456-57 (6th Cir. 2004), the Court set forth at length the
requirements regarding providing accommodations to employees with
disabilities:

> To recover under the ADA, a plaintiff must do more than
> show that he is "disabled" within the meaning of the
> statute. He must also establish that he is a "qualified
> individual with a disability" by showing: (1) that he
> "satisfies the prerequisites for the position [he holds
> or desires], such as possessing the appropriate
> educational background, employment experience, [and]
> skills ..."; and (2) that he "can perform the essential
> functions of the position held or desired, with or
> without reasonable accommodation."  Burns v. Coca-Cola
> Enter., Inc., 222 F.3d 247, 256 (6th Cir. 2000)(quoting
> Dalton v. Subaru-Isuzu Auto., Inc., 141 F.3d 667, 676
> (7th Cir. 1998)).
>
> "A disabled employee who claims that he or she is
> otherwise qualified with a reasonable accommodation
> 'bears the initial burden of proposing an accommodation
> and showing that that accommodation is objectively
> reasonable.'" Cassidy v. Detroit Edison Co., 138 F.3d
> 629, 633-34 (6th Cir. 1998)(quoting Monette, 90 F.3d at

1183).  An employer, then, has the burden of persuasion to show that an accommodation would impose an undue hardship. Id. at 634; Monette, 90 F.3d at 1184.

Although a "reasonable accommodation" may include reassignment to a vacant position, 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii), an employer need not reassign a disabled employee to a position for which he is not qualified, nor is the employer required to waive legitimate, non-discriminatory employment policies or displace other employees' rights in order to accommodate a disabled employee.  Burns, 222 F.3d at 257.  On the contrary, [a]ccording to the regulations, an employer need only reassign a disabled employee to a vacant position.  Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual.
Id. (internal citations omitted).

Furthermore, in order to satisfy its duty under the ADA, an employer is only required to transfer an employee to a position comparable to the employee's prior position.  Hoskins v. Oakland County Sheriff's Dep't, 227 F.3d 719, 728 n.3 (6th Cir. 2000). "The regulations instruct that employers 'should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time,' and should only reassign an individual to a lower graded position if the individual cannot be accommodated in an equivalent position. 29 C.F.R. pt. 1630, App. § 1630.2(o)."  Id.  The ADA does not require an employer to offer an employee a promotion as a reasonable accommodation, Cassidy, 138 F.3d at 634, and "an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided."  Hankins v. The Gap, Inc., 84 F.3d 797, 800-01 (6th Cir. 1996)(citing Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68-69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986)). In fact, where a comparable position is not vacant, an employer's obligation to reassign an employee may include an assignment to a position with a lower grade of pay if the employee meets the job's qualifications.  Cassidy, 138 F.3d at 634.

Finally, the regulations indicate that, although an employee is not required to accept an offered accommodation, if an individual rejects a reasonable

15

> accommodation, the individual will no longer be
> considered a qualified individual with a disability.
> <u>Hoskins</u>, 227 F.3d at 728 n.3; <u>Hankins</u>, 84 F.3d at 801.
> Specifically, 29 C.F.R. § 1630.9(d) provides:
> A qualified individual with a disability is not
> required to accept an accommodation, aid, service,
> opportunity or benefit which such qualified individual
> chooses not to accept. However, if such individual
> rejects a reasonable accommodation, aid, service,
> opportunity or benefit that is necessary to enable the
> individual to perform the essential functions of the
> position held or desired, and cannot, as a result of
> that rejection, perform the essential functions of the
> position, the individual will not be considered a
> qualified individual with a disability.  <u>Id.</u>

<u>Id.</u> at 456-58.

Initially, the Court notes that despite arguments to the contrary in his brief, the record evidence is undisputed that subsequent to his injury, Plaintiff was physically disabled, with or without accommodation, from performing the duties of a police officer with arrest powers.  All of the medical evidence in the record shows that Plaintiff is unable to perform the physical activities of a police officer, such as grappling with prisoners and arrestees.  Plaintiff also admitted in his deposition that he is unable to fire his service weapon because of the pain caused by the recoil.  Plaint. Dep. at 269.  Surely, these are two essential requirements of a policeman's job and Plaintiff has not proposed, nor can the Court conceive of, any accommodation which would allow a person to work as a law enforcement officer and not perform these functions.

The Court also agrees with Defendants that due to his application for disability retirement, Plaintiff is now estopped from claiming that he is able to perform the essential functions

of a police officer, with or without an accommodation.   In

Cleveland v. Policy Managment Sys. Corp., 526 U.S. 795 (1999),

the Court held that an ADA plaintiff's application for disability

benefits does not foreclose him from claiming that he can perform

the essential functions of the job.  Id. at 806.  Nonetheless,

the Court stated that the trial court cannot ignore the apparent

contradiction in the plaintiff's positions.  Id.  Thus, in order

to withstand summary judgment, the plaintiff must provide an

explanation "sufficient to warrant a reasonable juror's

concluding that, assuming the truth of, or the plaintiff's

good-faith belief in, the earlier statement, the plaintiff could

nonetheless 'perform the essential functions' of [his] job, with

or without "reasonable accommodation." Id. at 807.

        Plaintiff's application for retirement disability

benefits clearly contradicts his contention that he is able to

perform the duties of a police officer, with or without an

accommodation.  The relevant statute, Ohio Rev. Code § 145.35(G)

indicates that the disability determination is based on the

claimant's inability to perform his present duties.  The duties

from which Plaintiff was disabled from performing at the time of

his injury were those of deputy sheriff.  Therefore, Plaintiff's

application for disability benefits was a certification that he

was no longer able to perform the duties of a deputy sheriff.

Plaintiff's explanation for the contradiction is that he hoped

that within the five year leave of absence period the Sheriff's

Department would offer reasonable accommodations that would allow

17

him to perform a law enforcement job.  This explanation is clearly insufficient, however, because Plaintiff has not identified any reasonable accommodation which would allow him to resume a position with active law enforcement responsibilities. As stated in Hedrick, the Plaintiff bears the initial burden of proposing an accommodation and showing that it is objectively reasonable.  Hedrick, 355 F.3d at 457.  Because Plaintiff bears the burden of proposing an accommodation in the first instance, his naked hope that the Sheriff's Department would sua sponte offer him an accommodation within the five year leave of absence period is insufficient to explain away his certification that he is unable to perform the duties of a deputy sheriff.

Despite this conclusion, the Court does not believe that Plaintiff's application for disability retirement benefits forecloses him from claiming that he can perform a more sedentary position.  As indicated, under the pertinent statute, disability benefits are awarded when the claimant is unable to perform the service from which he was disabled.  Plaintiff was found disabled from performing the duties of a deputy sheriff.  The Court does not belief that this constitutes a certification that Plaintiff was or is unable to perform sedentary duties with or without an accommodation.

Nonetheless, the record demonstrates that Plaintiff was unable to perform even sedentary duties, with or without an accomodation.  Although in November 1999, Dr. Koppenhoefer stated that Plaintiff could perform the duties of patrol clerk, except

18

for breaking up fights, the following month, Dr. Roberts stated that "I do not see any way he can perform <u>any part</u> of the outlined job." Plaint. Ex. 13. (emphasis added). Dr. Roberts further stated that Plaintiff was to remain off work until he could be further evaluated. <u>Id.</u> In December 1999, Dr. Bacevich also concluded that Plaintiff was not able to perform light duty. Plaint. Ex. 16. In January 2000, Dr. Shapiro agreed that Plaintiff could not perform light duty because he could not sit for prolonged periods because of neck pain. Plaint. Ex. 17. Dr. Shapiro also believed that Plaintiff could not be in a position to exercise any responsibility because of his medication. <u>Id.</u> In 2003, Dr. Shapiro questioned whether Plaintiff's medication regimen would allow him to remain alert for an entire eight to twelve hour shift. <u>Id.</u> In April 2000, after examining new test and imaging results, Dr. Bacevich reiterated the opinions regarding Plaintiff's condition. Plaint. Ex. 21. Although Dr. Shapiro opined in July 2000 that Plaintiff could resume sedentary duties, by that time Plaintiff had applied for retirement disability and there is no indication that he made the Sheriff's Department aware of his improved prognosis. Plaint. Ex. 17.

    In addition, as Defendants correctly point out, Plaintiff's claim for OIL benefits contradicts his assertion that he was able to perform light duty or sedentary work. As indicated, the employer may assign the employee to light duty in lieu of benefits. Plaintiff's pursuant of his OIL grievance, however, indicates that he did not believe he could perform light

19

duty and indeed the arbitrator upheld Plaintiff's grievance on the grounds that he was incapable of performing light duty.

Finally, the Sheriff's Department did not fail to provide a reasonable accommodation to the Plaintiff by not reassigning him. Apparently the only accommodation that Plaintiff requested was a transfer to the RECI department. There is however no evidence in the record that there were any vacant positions in RECI at the time and the employer is not required to create a position in order to accommodate the Plaintiff. Monette, 90 F.3d at 1187. Although Plaintiff claims that the Sheriff's Department did not provide him with the same accommodations it afforded Sgt. Cox, it is also true that Plaintiff was aware of but did not request those same accommodations. As stated above, Plaintiff bears the initial burden of requesting a reasonable accommodation. Since he did not request to be accommodated in the same manner as Sgt. Cox, Defendants did not fail to accommodate him. See Lockard v. General Motors Corp., 52 Fed. Appx. 782, 787 (6th Cir. 2002)("[A]n employee cannot expect the employer to read his mind and know he secretly wanted a particular accommodation.")(quoting (Schmidt v. Safeway, Inc., 864 F. Supp. 991, 997 (D.Or. 1994)).

In summary, the record demonstrates that Plaintiff was not able to perform the functions of an active law enforcement officer with or without a reasonable accommodation. The record further shows that at the relevant time Plaintiff was unable to perform any sedentary or light duty position, with or without a

20

reasonable accommodation.  To the extent that he could perform light or sedentary duties, the record shows that Plaintiff failed to propose a reasonable accommodation for his alleged disability. Therefore, Plaintiff is not a qualified person with a disability under the ADA.  Accordingly, Defendants' motion for summary judgment on Plaintiff's disability discrimination claims is well-taken and is **GRANTED.**

## B. Reimbursement of OIL Benefits

Defendants also move for summary judgment on their counterclaim for reimbursement of the difference between Plaintiff's OIL benefits and his worker's compensation benefits. Plaintiff appears to admit the obligation but contests the amount he must repay.  Nonetheless, this claim is purely an administrative matter of state law.  Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Defendants' state law counterclaim. Accordingly, Defendants' counterclaim claim is **DISMISSED WITHOUT PREJUDICE.**  See Hankins v. The Gap, Inc., 84 F.3d 797, 802-03 (6th Cir. 1996).  Defendants' motion for summary judgment on this claim is **MOOT.**

## Conclusion

In conclusion, Defendants' motion for summary judgment on Plaintiffs' disability discrimination claims is well-taken and is **GRANTED.**  Plaintiff's disability discrimination claims are **DISMISSED WITH PREJUDICE.**  Defendants' motion for summary judgment on its counterclaim for reimbursement of OIL benefits is

**MOOT.**  This counterclaim is **DISMISSED WITHOUT PREJUDICE**.

Defendants also filed a motion to strike Plaintiff's memorandum in opposition to the motion for summary judgment (Doc. No. 46) on the grounds that it was untimely filed and exceeds the page limit established by local rule.  The Court prefers to resolve disputes on their merits and not on the technicalities of the local rules. Defendants have not been prejudiced by these alleged violations. Accordingly, Defendants' motion to strike is **MOOT**.  Plaintiff filed a motion to file a surreply brief (Doc. No. 52).  Although surreply briefs are not provided for in the local rules, the Court has considered Plaintiff's surreply, but it has not affected the decision here.  Accordingly, Plaintiff's motion to file a surreply brief is **MOOT**.


                   **IT IS SO ORDERED**


Date  September 20, 2004            s/Sandra S. Beckwith
                                  Sandra S. Beckwith, Chief Judge
                                   United States District Court