**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

LEONARD GREEN
CLERK

JILL COLYER
(513) 564-7024
www.ca6.uscourts.gov

Filed: October 7, 2005

Leanne R. Montgomery
Freking & Betz
215 E. Ninth Street
Fifth Floor
Cincinnati, OH 45202

Kathleen H. Bailey
Hamilton County Prosecutor's Office
230 E. Ninth Street
Suite 4000
Cincinnati, OH 45202-2151

RE: 04-4364
Breitfelder vs. Leis
District Court No. 01-00617

Enclosed is a copy of an order which was entered today in the above-styled case.

Jill Colyer
Case Manager

Enclosure

cc:
Honorable Sandra S. Beckwith
Mr. James Bonini

FILED
OCT 0 7 2005
LEONARD GREEN, Clerk

INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 01-617

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 04-4364

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

| | |
|---|---|
| JOSEPH BREITFELDER, | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Plaintiff-Appellant, | |
| v. | |
| SIMON LEIS, SHERIFF, et al., | OPINION |
| Defendants-Appellees. | |

BEFORE: COLE, ROGERS, McKEAGUE, Circuit Judges.

McKEAGUE, Circuit Judge. Plaintiff Joseph Breitfelder was a detective with the Regional Enforcement Narcotics Unit of the Hamilton County Sheriff's Department (the "Sheriff's Department"). He suffered an on-the-job injury which disabled him. After failing to receive a transfer, Breitfelder sued the county defendants for, among other things, employment discrimination under the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973.

Defendants sought summary judgment against Breitfelder. The district court concluded that, while Breitfelder was disabled, he was not able to perform the essential functions of light or sedentary duty. The court also found that Breitfelder failed to seek a reasonable accommodation. The court granted summary judgment to defendants.

1

*No. 04-4364*
*Breitfelder v. Leis*

Breitfelder appeals, arguing that there exist genuine issues of material fact on whether he was qualified to perform sedentary duty, with or without accommodation, and whether the defendants failed to engage him in an interactive process to find a reasonable accommodation. Upon review of the record, we reject Breitfelder's arguments. The record shows that Breitfelder was unable to perform sedentary work during the relevant time period. Even if he could have performed sedentary work, he failed to propose an objectively reasonable accommodation. Accordingly, we affirm the district court's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

### A.   Breitfelder's Injury and Medical Prognosis

On September 24, 1999, Breitfelder sustained an injury while installing a covert tracking device under a car. While Breitfelder was underneath the car, Sgt. Glenn Cox (Breitfelder's supervisor) pushed down on the fender causing the undercarriage to strike plaintiff's head. He felt a pop in his neck and saw a flash of light, followed by intense pain. He returned to work for a short period, but later went to the hospital where doctors suggested he had suffered a cervical injury and possible soft tissue damage.

Since the injury, Breitfelder has remained off work from the Sheriff's Department. Breitfelder was and remains physically unable to perform the functions of a police officer with arrest powers, with or without reasonable accommodation. Moreover, both sides agree that Breitfelder could not perform the functions of a "light duty" patrol clerk. The primary question on appeal is

*No. 04-4364*
*Breitfelder v. Leis*

whether Breitfelder was able to perform a sedentary position, with or without reasonable accommodation, within the Sheriff's Department during the period in question.

Breitfelder sought occupational injury leave ("OIL") benefits in October 1999. He described the basis for his request as "extreme constant pain in neck and decreased mobility of left arm." In court papers, Breitfelder described his disability as "completely debilitating." He testified that he could not use a keyboard or do laundry shortly after the injury.

The following month, the Sheriff's Department asked Dr. Ron Koppenhoefer, Breitfelder's then-treating physician, to fill out a two-part certification on plaintiff's fitness for temporary duty as a patrol clerk.[1] In response to the first part, Dr. Koppenhoefer certified that Breitfelder was unable to perform the duties of a regular patrol clerk. The second part asked whether Breitfelder could be temporarily reassigned as a patrol clerk on light duty with less strenuous duties. One of the requirements of light duty, however, was the ability to break up fights. Dr. Koppenhoefer certified that Breitfelder could be reassigned to light duty, but added, "I question whether he could break up fights at this time."

In light of Dr. Koppenhoefer's certification, the Sheriff's Department directed Breitfelder to report to duty as a patrol clerk on November 20, 1999. Rather than report to duty, however, Breitfelder requested a meeting with the Sheriff because he knew he would be unable to perform

---

[1] Patrol clerks are sworn police officers with arrest powers. Their main function is to assist in the office by answering phones, processing reports and paperwork, handling inquiries, and processing prisoners. The job description includes a number of physical skills and abilities, among others, the ability to lift, carry or drag an average-sized adult out of a cell, stay awake and alert for long periods of time, and physically break up fights and gain physical control over persons in custody.

*No. 04-4364*
*Breitfelder v. Leis*

certain functions of a patrol clerk, such as breaking up fights. During the meeting, he requested an assignment working with computers in the Sheriff's Department Regional Electronics and Computer Investigations ("RECI") task force.[2] Breitfelder claims that it was known within the department that he was "very competent" with computers and the work was not physically demanding. Yet, during his deposition, Breitfelder testified that at the time of the meeting he was "pretty much unsure" whether he could return to work even in a limited capacity.

Sheriff Leis denied the request for a transfer, telling Breitfelder that he could not just reassign him to another position. The Sheriff admitted in his deposition that he believed at the time of this meeting that Breitfelder was faking the severity of or limitations imposed by his injury. As to Breitfelder's ability to perform the traditional law-enforcement activities of the RECI task force, Sheriff Leis testified: "Obviously, if he couldn't answer a telephone or work paperwork, he certainly couldn't do that type of work."

The Sheriff's Department subsequently sought additional medical opinions on Breitfelder's ability to return to work in some capacity. In December 1999, Dr. John Roberts, one of Breitfelder's treating physicians, certified that Breitfelder was unable to perform the regular or light duties of a patrol clerk. He noted that he could "not see any way [Breitfelder] can perform any part of the

---

[2] In 1999, all RECI task force personnel were sworn officers. In addition to performing computer-aided investigations, officers in the RECI task force engaged in traditional law-enforcement activities, including engaging in criminal investigations, preparing search warrants, and making physical arrests. The officers had to be certified and meet the qualifications of a patrol officer.

*No. 04-4364*
*Breitfelder v. Leis*

outlined job," which included staying awake and alert for long periods of time. He concluded that Breitfelder was "to remain off work."

The Sheriff's Department also obtained an independent medical examination from Dr. Bernard Bacevich. Based on his examination, Dr. Bacevich concluded: "At this point in time, with the amount of pain and the amount of restriction of motion of the neck, as well as the left arm, and the fact that he has not [been] independently driving his vehicle, I feel light duty is not possible."

Breitfelder received further treatment for his disability from Dr. Carl Shapiro. After examining him on January 4, 2000, Dr. Shapiro noted the following:

> I am going to change his medication around and take him off Vicodin and put him on OxyContin, which is a 12-hour time release. I am also going to get him some decent sleep with a tricyclic antidepressant.
>
> He is incapable of defending himself, as he only has one usable arm at this time. Consequently, I am going to keep him off work. He is not able to do light duty in as much as prolonged sitting is going to aggravate persistent neck pain. Also, I don't think he should be in a position where he is going to be responsible, in as much as he is going to require some analgesia at this time.

Breitfelder and Sheriff Leis met a second time on April 7, 2000. According to Breitfelder, the purpose of the meeting was to discuss the Sheriff's denial of his claim for OIL benefits and refusal to transfer him to the RECI task force.[3] The details of this meeting are not reflected in the record except that it lasted about an hour and the Sheriff again denied the OIL benefits and the request for a transfer to the RECI task force. There is nothing in the record to suggest Breitfelder

---

[3] The Sheriff denied the claim for OIL benefits on the ground that the injury was not substantiated by objective medical evidence. An arbitrator later awarded Breitfelder OIL benefits after finding that he had sustained an injury and "as of April 26, 2000, . . . was still unable to work in any capacity for the [Sheriff's Department] due to his occupational injury."

*No. 04-4364*
*Breitfelder v. Leis*

sought a transfer to the RECI task force after this second meeting. Moreover, Breitfelder testified that he never requested any accommodation other than the transfer, such as the accommodations given earlier to Sgt. Cox for assistance with lifting heavy objects and relief from combative duties with arrestees and prisoners.

On July 26, 2000, Dr. Shapiro reexamined Breitfelder. This time the doctor observed improvement:

> He presents in NAD [no acute distress] today. He is alert, oriented, and cooperative. He is oriented x 3. His cranial nerves are intact. His deep tendon reflexes, motor and sensory exam are remarkable for marked decrement in strength, with grip on the left side, and most strength modalities are decreased on the left. Deep tendon reflexes and sensory exams are unchanged.
>
> Joe is still having ongoing pain issues and I did put him back on OxyContin and renewed his Vicodin also. I discussed future care with him and I probably will be transferring him for pain management. *I think he probably could be now employed at a sedentary level* and I think vocation re-education would be appropriate for him.

(emphasis added). Breitfelder did not communicate his improved prognosis to defendants prior to filing this lawsuit.

Throughout the course of treatment, physicians prescribed Breitfelder various drugs, including Vicodin, OxyContin, MS Contin, Neuronin, Trazodone, Voltaren, and Baclofen. Dr. Shapiro later recalled that Breitfelder's medication regime "included a lot of sedative, hypnotics and opioids used in the treatment of his pain." He expected that "perhaps even [Breitfelder's] judgement might be impaired by this" regime. "All the medications he was on would set him up for hyper somnolence so he might stay awake, but I would not count on him being alert for a full eight to

*No. 04-4364*
*Breitfelder v. Leis*

twelve hour shift." Breitfelder explained that he "struggled with the pain medications and their side effects until stabilization was obtained."

In May 2000, Breitfelder applied for and ultimately was granted a disability retirement through the Public Employees Retirement System of Ohio. Under the applicable statute, Ohio Rev. Code § 145.35(E), if the disability is expected to be longer than twelve (12) months, it is presumed to be permanent. He remains on disability retirement status at this time.

### B.    Breitfelder's Claims

Breitfelder filed a seven-count complaint against the defendants in their official and individual capacities alleging federal and state claims related to his disability. Following dismissal of several claims, Breitfelder had remaining claims of employment discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Defendants filed a counterclaim against Breitfelder seeking $2,106 to offset the OIL benefits.

Defendants moved for summary judgment on Breitfelder's discrimination claims and their counterclaim. The district court granted defendants' motion on Breitfelder's claims, and declined supplemental jurisdiction on the counterclaim, dismissing it without prejudice. Breitfelder now seeks review of the district court's decision.

## II.  DISCUSSION

No. 04-4364
*Breitfelder v. Leis*

We review *de novo* the district court's grant of summary judgment. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 252 (6th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the evidence and draw all reasonable inferences in favor of Breitfelder, the nonmoving party. *Mahon v. Crowell*, 295 F.3d 585, 588 (6th Cir. 2002).

### A. The Americans With Disabilities Act of 1990

The ADA prohibits a covered employer from discriminating against a qualified individual with a disability because of that individual's disability.[4] 42 U.S.C. § 12112(a). A person is disabled under the ADA if that person:

(1) has "a physical or mental impairment that substantially limits one or more of the major life activities";

(2) has "a record of such an impairment"; or

(3) has been "regarded as having such an impairment."

*Id.* § 12102(2).

To recover damages under the ADA, a disabled individual must establish that he or she was a "qualified individual with a disability." To meet this standard, the person must be: (1) disabled;

---

[4]The requirements of the Rehabilitation Act generally parallel the requirements of the ADA with respect to employment discrimination claims. *Mahon*, 295 F.3d at 588-89. Therefore, we analyze Breitfelder's ADA and Rehabilitation Act claims together under the same analysis.

No. 04-4364
*Breitfelder v. Leis*

and (2) able to perform, "with or without reasonable accommodation," the "essential functions of the employment position" held or desired. *Id.* § 12111(8).

> Thus, in order to establish his *prima facie* case, the person must show that he or she:
>
> (1)  is disabled within the meaning of the ADA;
>
> (2)  is qualified to perform the essential functions of the job held or desired with or without reasonable accommodation; and
>
> (3)  suffered an adverse employment decision because of the disability.

*Burns*, 222 F.3d at 253 (citations omitted).

In granting defendants' motion for summary judgment, the district court found that Breitfelder failed to make his *prima facie* case. Specifically, the court concluded that although Breitfelder was a disabled person under the ADA, he was not qualified to perform the essential functions of the job he held or desired, with or without reasonable accommodation. Moreover, the court found that Breitfelder failed to request accommodations similar to those afforded other Sheriff's Department employees, even though he admitted he was aware of those accommodations. Breitfelder argues that there exist genuine issues of material fact on both of these issues.

**B.    Breitfelder Was Unable to Perform Any Position, With or Without Accommodation**

Neither party disputes the district court's finding that Breitfelder was physically disabled, or that Breitfelder could not perform the duties of a police officer with arrest powers, with or without accommodation. Moreover, Breitfelder admits on appeal that he could not perform the essential duties of a patrol clerk, with or without accommodation. (This latter position was the "light duty"

No. 04-4364
*Breitfelder v. Leis*

accommodation offered by Sheriff Leis in November 1999.) Instead, Breitfelder argues that the light duty patrol clerk position was not a reasonable accommodation. The Sheriff's Department should have offered him a sedentary position such as the one he suggested, working with computers in the RECI task force.

The burden of showing he could perform the essential tasks of a sedentary position, with or without accommodation, fell to Breitfelder. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456-57 (6th Cir.), *cert. denied*, 125 S. Ct. 68 (2004); *Burns*, 222 F.3d at 256. A review of the record shows that Breitfelder could not perform a sedentary position like the one he proposed during the time in question. His treating physicians repeatedly refer to Breitfelder's "extreme," "intense" pain in his neck and left arm. Breitfelder himself described his disability as "completely debilitating." He could not use a keyboard shortly after the injury. His pain medications included sedatives, hypnotics, and opioids, which affected his judgment and alertness over the normal course of a work day. One of his treating physicians did not think Breitfelder could perform any of the regular duties of a patrol clerk, which included staying awake and alert for long periods of time. Another of his physicians opined that Breitfelder could not "do light duty in as much as prolonged sitting is going to aggravate persistent neck pain" and should not be in a "position where he is going to be responsible" due to his medication regime.

Breitfelder contends that the physicians reports were made in the context of whether he could perform light duty as a patrol clerk, not a more sedentary position. There are several problems with this line of reasoning. First, in addition to the certifications made by Drs. Koppenhoefer and Roberts, there were numerous other physician examination notes that confirm Breitfelder was unfit

No. 04-4364
*Breitfelder v. Leis*

for even sedentary duty within the Sheriff's Department. Second, Breitfelder was certainly in a position to ask his treating physicians whether, in their opinion, he was capable of performing sedentary duties during the period of time at issue; he failed to do so until several years later and only after filing this lawsuit. Considering the physicians' reports to the Sheriff's Department, physician examination notes, deposition testimony and other record evidence, it is clear that Breitfelder was unfit for even sedentary work within the Sheriff's Department between November 1999 and July 2000. Accordingly, the district court was correct in finding that Breitfelder failed to make his *prima facie* case of discrimination under the ADA.

C.    **Defendants Did Not Violate the ADA by Refusing to Reassign Breitfelder**

Breitfelder further argues that defendants violated the ADA by not engaging him in an interactive process to find a reasonable accommodation. Yet, even if Breitfelder could have performed the essential tasks of a sedentary position during the time in question, he failed to propose an objectively reasonable accommodation. If there was a breakdown in the interactive process, Breitfelder bears a significant amount of the responsibility for the break.

Federal regulations suggest that the employee and employer engage in an interactive process to determine whether a reasonable accommodation can be made for an employee's disability. Specifically, the regulations state:

> To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

- 11 -

No. 04-4364
*Breitfelder v. Leis*

29 C.F.R. § 1630.2(*o*)(3). "The regulations explain that the appropriate accommodation, if it exists, "is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." *Id.* § 1630.9; *see also E.E.O.C. v. United Parcel Serv., Inc.*, 249 F.3d 557, 562 n.1 (6th Cir. 2001) (noting that the regulations encourage this type of flexible, interactive process).

Breitfelder argues that defendants, specifically Sheriff Leis, acted in bad faith and failed to involve Breitfelder in an interactive process to accommodate him. It is clear that Sheriff Leis did not believe Breitfelder was disabled, at least to the extent claimed by Breitfelder. Yet, even if Sheriff Leis questioned the extent of Breitfelder's disability, it is undisputed that after Breitfelder sought OIL benefits, Sheriff Leis took the initial step to accommodate Breitfelder's disability by reassigning him to light duty as a patrol clerk after consulting with one of his treating physicians.

Although Breitfelder suggested he be transferred to a job working with computers in the RECI task force, under his own logic, this was not a request for a reasonable accommodation. Breitfelder admits he could not be reassigned to a position which required physical tasks. Yet, in 1999, all RECI personnel were sworn officers who engaged in traditional law-enforcement activities, including criminal investigations as well as physical arrests and search warrants. The officers had to be certified and meet the qualifications of a patrol officer. These are the same qualifications which Breitfelder admitted he could not meet. The Sheriff's Department was under no obligation to reassign Breitfelder to a position for which he was not otherwise qualified or "waive legitimate, non-discriminatory employment policies" to accommodate him. *Hedrick*, 355 F.3d at 457 (citing

*No. 04-4364*
*Breitfelder v. Leis*

*Burns*, 222 F.3d at 257). Thus, his request to be transferred to the RECI task force was not a request for an objectively reasonable accommodation, given his disability.

Moreover, even if Sheriff Leis believed Breitfelder was faking his disability and, because of this, failed to engage in an interactive process with Breitfelder to accommodate the disability, Breitfelder's claims still fail. Under the Third Circuit decision relied upon by Breitfelder, the employer fails to participate in the interactive process only if, among other things, the employee can demonstrate that "the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 320 (3d Cir. 1999) (citation omitted). Because Breitfelder's disability could not be reasonably accommodated within the Sheriff's Department, *supra*, Sheriff Leis's actions did not violate the ADA.

Finally, Breitfelder points to the accommodations afforded Sgt. Cox and others and argues this is evidence of discrimination against him. Yet, it is Breitfelder who was in the better position to request such accommodations. He testified that at the time of his disability, he was aware of the accommodations made for Sgt. Cox and others, and believed he could have worked under similar accommodations.[5] Yet, rather than ask Sheriff Leis to make similar accommodations for him, Breitfelder remained silent. Since he did not request to be accommodated in the same manner, defendants did not fail to accommodate him.

### III. CONCLUSION

---

[5] Whether Breitfelder could have, in fact, worked under similar accommodations given the extent of his disability is another question.

No. 04-4364
*Breitfelder v. Leis*

For the foregoing reasons, we affirm summary judgment for the defendants on Breitfelder's ADA and Rehabilitation Act claims.